# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No.59628-8-II |
| BRIAN ANTHONY STRONG | |
| Petitioner. | UNPUBLISHED OPINION |

MAXA, J. – In this personal restraint petition (PRP), Brian Strong challenges 22
community custody conditions following his conviction of two counts of second degree
possession of depictions of a minor engaged in sexually explicit conduct. He also argues that
certain supervision and community custody placement fees were improperly imposed.

The State concedes that special conditions 25 and 26 in appendix H, which permit
Strong's community custody officer (CCO) to randomly search Strong's electronic devices to
monitor compliance with his community custody conditions prohibiting the use of certain
electronic devices or audio/video recording equipment, violates Strong's constitutional privacy
interests.[1] The State asks that this condition be remanded to the trial court and revised to permit
searches only upon reasonable cause.

We (1) remand for the trial court to strike special condition 2 in Appendix H, (2) remand
for the trial court to either strike special condition 8 in appendix H or amend it to include a

---

[1] In its brief the State refers to special condition 24. But special condition 24 does not refer to
random searches. Because the language the State refers to appears in special conditions 25 and
26, we assume the State's argument applies to those special conditions.

reasonable cause requirement, (3) remand for the trial court to amend special condition 12 in Appendix H to clarify that the urinalysis and breath testing condition is solely for monitoring purposes, (4) remand for the trial court to clarify special condition 24 regarding when approval of internet use is required and to ensure that any internet monitoring equipment is sufficiently tailored to Strong's risk to the community, (5) remand for the trial court to clarify special condition 25 to ensure that this condition is tailored to Strong's risk to the community and does not exclude constitutionally permissible uses of electronic devices, (6) remand for the trial court to amend special conditions 25 and 26 to include a reasonable cause requirement, (7) reverse the trial court's imposition of a mental health evaluation condition in special condition 27 in Appendix H and remand for the trial court to determine whether to order a mental health evaluation consistent with the requirements in RCW 9.94B.080, and (8) remand for the trial court to strike the supervision fee provision in section 4.6(b)(B)(7) of the judgment and sentence and the community placement fee provision in Appendix F. We reject Strong's other challenges to community custody conditions.

Accordingly, we grant this PRP in part and remand for the trial court to take further action consistent with this opinion.

FACTS

In February 2020 law enforcement received a tip from Facebook regarding an account that had uploaded an image of child pornography. Pursuant to a warrant, law enforcement seized Strong's electronic devices and discovered 50 videos and 800 images believed to be child pornography. Strong admitted to possessing child pornography.

In August 2022, Strong pleaded guilty to two counts of second degree possession of depictions of minors engaged in sexually explicit conduct. In October, the trial court sentenced

Strong to concurrent standard range sentences of 13 months for each offense to be followed by 36 months of community custody. As part of the judgment and sentence and two appendices, the trial court imposed numerous community custody conditions. Strong did not appeal his convictions or sentence.

In March 2023, shortly before his expected release into community custody in July 2023, Strong filed a motion in the trial court to modify or strike numerous custody conditions. The trial court granted in part the motion to correct Strong's judgment and sentence and struck standard condition 4 in Appendix H, which had required Strong to pay supervision fees as determined by the Department of Corrections (DOC). The court did not alter any of the remaining terms and conditions of the original judgment and sentence.

In October 2023, less than a year after his judgment and sentence became final, Strong filed a PRP challenging the same conditions he previously had challenged in his March 2023 motion to the trial court. This court appointed counsel, who submitted a brief addressing four of the challenged community custody conditions. The State filed a brief addressing only those four conditions.

ANALYSIS

A. PRP PRINCIPLES

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018).

RAP 16.7(a)(2) requires a petitioner to specifically identify the evidence available to support the factual allegations in the PRP. *In re Pers. Restraint of Wolf*, 196 Wn. App. 496, 503,

3

384 P.3d 591 (2016). The petitioner must show that he has competent, admissible evidence to establish facts that would entitle him to relief. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). Conclusory allegations are insufficient. *Wolf*, 196 Wn. App. at 503. In addition, the factual allegations must be based on more than speculation and conjecture. *Yates*, 177 Wn.2d at 18.

When a petitioner files a timely PRP that seeks similar relief to relief sought in a prior PRP, we must transfer the PRP to the Supreme Court as a successive petition. *In re Pers. Restraint of Bell*, 187 Wn.2d 558, 563, 387 P.3d 719 (2017). However, even though Strong raised identical issues in his trial court motion, this PRP is not successive because this is Strong's first PRP. *In re Pers. Restraint of Bailey*, 141 Wn.2d 20, 28, 1 P.3d 1120 (2000).

B.  LEGAL PRINCIPLES

1.  Standard of Review

We review the imposition of community custody conditions for an abuse of discretion. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). "A trial court abuses its discretion if it imposes an unconstitutional condition." *Id.* And, unlike statutes, we do not presume that community custody conditions are valid. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015).

2.  Vagueness

Community custody conditions that are vague are unconstitutional under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678-79, 425 P.3d 847 (2018). Community custody conditions are unconstitutional if they (1) do not define the condition

4

" 'with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . [do] not provide ascertainable standards . . . to protect against arbitrary enforcement.' " *Id.* at 678 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

A community custody condition " is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *Padilla*, 190 Wn.2d at 677. Rather, the question is whether fair minded citizens have fair warning of proscribed conduct. *State v. Shreve*, 28 Wn. App. 2d 785, 791, 538 P.3d 958 (2023). And they do if "ordinary people can understand what is and is not allowed, and are protected against arbitrary enforcement." *State v. Richards*, 28 Wn. App. 2d 730, 743, 537 P.3d 1118 (2023), *aff'd on other grounds*, 4 Wn.3d 83, 559 P.3d 107 (2024).

When deciding a vagueness challenge, we consider the terms in the context in which they are used. *In re Pers. Restraint of Ansell*, 1 Wn.3d 882, 898, 533 P.3d 875 (2023). "Community custody conditions should be 'read in a commonsense fashion in the context of the judgment and sentence, and related documents that will be available to [the CCO].' " *Id.* (alteration in original) (quoting *State v. Johnson*, 197 Wn.2d 740, 748, 487 P.3d 893 (2021)).

3. Crime Related

Under RCW 9.94A.703(3)(f), the trial court may require an offender to "[c]omply with any crime-related prohibitions." A crime-related prohibition must "directly relate[ ] to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). There must be a basis for connecting the condition to the crime. *State v. Geyer*, 19 Wn. App. 2d 321, 331, 496 P.3d 322 (2021).

Determining whether community custody conditions are crime-related is discretionary, and a trial court does not abuse its discretion if there is a reasonable relationship between the crime of conviction and the condition. *Nguyen*, 191 Wn.2d at 683-84.

C.     OTHER CONDITIONS "PER CCO"

Section 4.6(a) of the judgment and sentence ordered Strong to comply with "Other conditions . . . per CCO" during his term of community custody. Clerk's Papers (CP) at 29. Strong argues that this requirement is unconstitutionally vague because it relies on the CCO's subjective belief regarding what constitutes a reasonable community custody condition and grants discretion to the CCO without guidance, thereby failing to provide ascertainable standards for enforcement and allowing for arbitrary enforcement. We disagree.

Former RCW 9.94A.703(1)(b) (2021) states as a mandatory condition that the trial court "[r]equire the offender to comply with any conditions imposed by [DOC] under RCW 9.94A.704." And former RCW 9.94A.704 (2019) establishes DOC's authority, provides guidance as to the nature of the conditions the DOC may impose, and requires that the defendant be notified of the conditions that are imposed or modified under the statute. Former RCW 9.94A.704(2)-(5), (7)(a).

Section 4.6(a)'s condition clearly and unambiguously advised Strong in a manner that an ordinary person would understand that the authority to impose other community custody conditions was placed with the DOC and that Strong must comply with these conditions. And the trial court did not grant the CCO "unbridled discretion to proscribe conduct because [DOC's] authority is defined by statute." *State v. Ortega*, 21 Wn. App. 2d 488, 496, 506 P.3d 1287 (2022). Accordingly, we hold that this condition is not unconstitutionally vague.

6

D.    AFFIRMATIVE ACTS

In section 4.6(b)(B)(8) of the judgment and sentence, the trial court required that Strong "perform affirmative acts as required by DOC to confirm compliance with the orders of the court." CP at 30. And in Appendix F, the court required that Strong "shall submit to affirmative acts necessary to monitor compliance with court orders as required by DOC." CP at 36.

Strong argues that these provisions are unconstitutionally vague because they rely on the CCO's subjective belief regarding what is "necessary" to confirm compliance with court orders. Personal Restraint Petition (PRP) at 13-14. He argues that these provisions must be struck unless a narrow definition of "necessary" can be applied that avoids subjective determination of the type of affirmative act needed to confirm or monitor compliance with a particular court order. PRP at 15-16. We disagree.

As noted above, the trial court was statutorily required to order Strong to comply with conditions imposed by DOC under former RCW 9.94A.704. Former RCW 9.94A.703(1)(b). In addition, former RCW 9.94A.704 permitted DOC to require affirmative conduct to the extent the conditions were not contrary to those ordered by the court and did not contravene or decrease any court-ordered conditions. Former RCW 9.94A.704(4), (6). And RCW 9.94A.030(10) provided that "affirmative acts necessary to monitor compliance with the order of a court may be required by [DOC]."

The affirmative acts conditions clearly and unambiguously advised Strong in a manner that an ordinary person would understand that the authority to define other community custody conditions, including requiring affirmative acts to confirm and monitor compliance with court-ordered conditions, was placed with the DOC and that Strong must comply with these conditions. Accordingly, we hold that these conditions are not unconstitutionally vague.

7

E.      CONDITION IMPOSED UNDER FORMER RCW 9.94A.704

Special condition 2 in Appendix H provided: "Indeterminate Sentences: Abide by any Washington State [DOC] conditions imposed (RCW 9.94A.704)." CP at 37. Strong argues that special condition 2 should not have been included because he was not sentenced to an indeterminate sentence. We agree that this condition is superfluous and should be stricken.

F.      CONTACT WITH VICTIMS

In special condition 3 in Appendix H, the trial court prohibited Strong from having direct or indirect contact with the victims of the offenses without prior written approval from his CCO, treatment provider, and the court. Strong argues that this condition is improper because (1) the condition is not crime related; and (2) his crimes were victimless crimes and he does not know who the victims are, so there is no realistic way to apply this condition. We disagree.

Crime-related prohibitions can include a no-contact order regarding the victim of a crime. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 376, 229 P.3d 686 (2010). The children depicted in the images in Strong's possession are the victims of the crimes. *State v. Ehli*, 115 Wn. App. 556, 560-61, 62 P.3d 929 (2003). Special condition 3 is clearly crime related because it protects the victims of Strong's crimes. Because the victims were not identified, the condition may be difficult to enforce. But Strong does not cite to any authority establishing that a community custody condition is improper merely because it is potentially difficult to enforce. Accordingly, this argument fails.

G.      DATING RELATIONSHIPS

Special condition 5 in Appendix H provided that Strong shall "[i]nform the supervising CCO and sexual deviancy treatment provider of any dating relationship. Disclose sex offender

status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such." CP at 37.

Strong argues that the portion of special condition 5 requiring him to inform his supervising CCO and sexual deviancy treatment provider of any "dating relationship," is unconstitutionally vague because the term "dating relationship" is not sufficiently defined as to be understood by an ordinary person. The Supreme Court rejected this argument in *Nguyen*, 191 Wn.2d at 681-83. Although Strong appears to argue that *Nguyen* was wrongly decided because the Supreme Court relied on a definition of "dating relationship" that included the vague term "romantic." But we are bound to follow the Supreme Court's decision. *State v. Winborne*, 4 Wn. App. 2d 147, 175, 420 P.3d 707 (2018). Accordingly, this argument fails.

Strong also argues that special condition 5 is unconstitutionally vague because it fails to identify what "treatment provider" must give approval for sexual contact in a relationship or what type of "relationship" to which it refers. But read in context, special condition 5 clearly requires disclosure to a "sexual deviancy treatment provider" in the context of a "dating relationship." CP at 37. So this argument has no merit.

H.     HOME VISITS

Special condition 8 in Appendix H required Strong to "[c]onsent to DOC home visits to monitor compliance with supervision." CP at 37. The condition further stated that "[h]ome visits include access for the purposes of visual inspection of all areas of residence in which the offender lives or has exclave/joint control/access." CP at 37. Strong argues that this condition is unconstitutionally overbroad because there is no reasonable cause requirement. We agree.

DOC officers have authority to conduct warrantless searches of offenders under community custody supervision. RCW 9.94A.631(1) provides, "If an offender violates any

condition or requirement of a sentence, a [CCO] may arrest or cause the arrest of the offender without a warrant, pending a determination by the court or by [DOC]." Under this statute, DOC has the authority to search a probationer's home only if a correctional officer has a reasonable suspicion to believe a probation violation by the probationer has occurred. *State v. Cornwell*, 190 Wn.2d 296, 302, 412 P.3d 1265 (2018). Further, DOC must search the home only to the extent necessary "for the [DOC] to monitor compliance with the particular probation condition that gave rise to the search." *Id*. at 304. And there must be a nexus between the property searched and the suspected probation violation. *Id*. at 304, 306.

None of these limitations are contained in special condition 8. Rather, the condition gives correctional officers an unfettered right to search Strong's residence. *Id*. at 303. Accordingly, we remand for the trial court to either strike this condition or amend it to include a reasonable cause requirement.

I.     SEX-RELATED BUSINESSES AND SEXUALLY EXPLICIT MATERIALS

Special condition 9 in appendix H prohibited Strong from "enter[ing] sex-related businesses, which means: x-rated movies, adult bookstores, strip clubs, and any location where the primary source of business is related to sexually explicit materials." CP at 37.

Special condition 10 in Appendix H provided,

> You must not possess or access sexually explicit materials that are intended for sexual gratification. This means, but is not limited to, material which shows genitalia, bodily excretory behavior that appears to be sexual in nature, physical stimulation of unclothed genitals, masturbation, sodomy (i.e., bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of human genitals, unless given prior approval by your sexual deviancy provider. Works of art or of anthropological significance are not considered sexually explicit material.

CP at 37-38.

Strong argues that special conditions 9 and 10 are not crime related because the record does not show that entering into a sex-related establishment or possession of or access to lawful sexually explicit materials or images had any relation to his crimes. He contends that these conditions are overbroad and asks that we strike them or narrow the restrictions to apply only to sex-related businesses and sexually related materials that pertain to minors.

The Supreme Court previously has considered both of these conditions and concluded they were generally crime related to sex offenses. *See Nguyen*, 191 Wn.2d at 683-87. According to *Nguyen*, the prohibitions on frequenting sex-related businesses and sexually explicit materials and relate to the "inability to control [ ] sexual urges." *Id*. at 687. As the court explained, "It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation." *Id*. at 686. Eliminating access to both sex-related businesses and sexually explicit materials attempts to "prohibit conduct that might cause the convict to reoffend." *Id*. at 687. As in *Nguyen*, because Strong's crimes are related to his "inability to control [ ] sexual urges," his argument that these two conditions are not crime-related fails.

J.      ALCOHOL AND MARIJUANA

Special condition 11 in Appendix H provides, "Do not use or consume alcohol and/or Marijuana." CP at 38. Neither Strong's judgment and sentence, Appendix F, nor condition 20 in Appendix H included any alcohol restrictions. Strong argues that the omission of any alcohol condition in his judgment and sentence, Appendix F, or condition 20 in Appendix H demonstrate that the trial court did not intend impose this restriction. We disagree.

11

No alcohol conditions were mentioned at the sentencing hearing. The omission of this condition in other parts of the judgment and sentence and appendices is immaterial because the trial court did impose this condition elsewhere. The trial court's must have believed that imposing the condition under special condition 11 was sufficient. Accordingly, Strong fails to demonstrate that the alcohol consumption restriction was included in error.

K.    URINALYSIS AND BREATH ANALYSIS

Special condition 12 in Appendix H provides that Strong must "[b]e available for and submit to urinalysis and/or breathanalysis upon the request of the CCO and/or the chemical dependency treatment provider." CP at 38.

Strong argues that without a finding that a chemical dependency contributed to the offense, this condition is not crime related. The trial court had the statutory authority to impose conditions necessary to enforce statutorily authorized conditions such as limitations on the consumption or use of alcohol or controlled substances "regardless of the offense committed." *State v. Vant*, 145 Wn. App. 592, 604, 186 P.3d 1149 (2008). Accordingly, this argument fails.

Strong further argues that unless there is "just cause," such testing is an unlawful search in violation of article I, section 7 of the Washington Constitution. We agree.

Authorized enforcement conditions –– such as special condition 12 – also must be constitutional, and imposing an unconstitutional condition is an abuse of discretion. *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019). The Supreme Court recently noted,

> Our state constitution guarantees that "[n]o person shall be disturbed in [their] private affairs, or [their] home invaded, without authority of law." WASH. CONST. art. I, § 7. Article I, section 7 requires a two-pronged inquiry to determine if a violation has occurred: "(1) whether the contested state action "disturbed" a person's 'private affair[s]' and, if so, (2) whether the action was undertaken with 'authority of law.' " [*State v. Olsen*, 189 Wn.2d 118, 123, 399 P.3d 1141 (2017)] (alteration in original) (quoting *State v. Reeder*, 184 Wn.2d 805, 814, 365 P.3d 1243 (2015)).

*State v. Nelson*, ___ Wn.3d ___, 565 P.3d 906, 916 (2025).

A person on probation has less constitutional privacy protection than other citizens. *Id*. But urinalysis and breath testing both disturb a person's private affairs and are searches that implicate these reduced privacy interests under article I, section 7. *Id.*

"As to the second prong of the article I, section 7 inquiry, the [urinalysis and breath analysis] testing conditions are supported by "authority of law" if, but only if, they serve 'a compelling interest, achieved through narrowly tailored means." *Id*. at 917. In *Nelson*, the Supreme Court recently held that a similar testing condition was supported by authority of law when the judgment and sentence issued when a special sex offender sentencing alternative was imposed contained a condition that the defendant refrain from using alcohol and drugs. *Id.* Similarly here, special condition 12 was supported by authority of law because the court imposed a community custody condition prohibiting the use of alcohol and marijuana.

The court in *Nelson* also found that the urinalysis and breath analysis conditions, as written, were "narrowly tailored – not random – for monitoring purposes." *Id.* But the conditions in *Nelson* differ from special condition 12 because they stated that the defendant was required to submit to testing "to ensure no alcohol consumption" and "to ensure drug-free status." *Id.* at 910. Here, in contrast, the testing condition is not limited to ensuring drug-free status or compliance. It merely provides that Strong must "[b]e available for and submit to urinalysis and/or breathanalysis upon the request of the CCO and/or the chemical dependency treatment provider." CP at 38. Because this condition is not limited to ensuring compliance, it would not preclude the CCO or treatment provider from ordering testing for other purposes not related to compliance or enforcement of the alcohol and marijuana condition.

Because this condition is not narrowly tailored, we remand to the trial court to amend this condition to clarify that it is solely for monitoring purposes.

L.      POLYGRAPH EXAMINATION

Special condition 13 in Appendix H required Strong to "[s]ubmit to and be available for polygraph examination as directed to monitor compliance with conditions of supervision." CP at 38.

Although Strong concedes that polygraph testing is permissible as a monitoring tool as proscribed by a treatment therapist during his aftercare treatment, he contends that once his aftercare is complete, the monitoring requirement is no longer applicable. Strong also argues that this condition is unconstitutionally vague and overbroad because it fails to identify who can direct a polygraph examination or specify that the issue being monitored for compliance must be specified. Finally, he asserts that this condition fails to establish the frequency with which it may be applied. We disagree.

Washington courts consistently have found polygraph testing constitutional as a tool to monitor compliance with treatment of special community custody conditions. *State v. Olsen*, 189 Wn.2d 118, 130, 399 P.3d 1141 (2017); *State v. Combs*, 102 Wn. App. 949, 953, 10 P.3d 1101 (2000). Special condition 13 expressly states that polygraph examinations are to be used only to monitor compliance with conditions of supervision. This is sufficient to advise a fair-minded citizen of the fact they will be subject to testing in order to monitor compliance with any community custody conditions.

Further, the fact special condition 13 may not identify who can order the testing, require that the specific issue being monitored be specified, or establish the frequency of the tests does not establish that the condition is vague because all that is required is that the provision provide

14

Strong with fair warning of the testing. *Shreve*, 28 Wn. App. 2d at 791. Accordingly, this argument fails.

M.     THINKING FOR A CHANGE PROGRAM

Special condition 15 in Appendix H required Strong to enroll in DOC's Thinking for a Change program within two weeks of his release from incarceration. Strong argues that the trial court abused its discretion when it imposed this requirement because the course was not crime-related. We disagree.

Strong asserts that Thinking for a Change is a program that provides participants with a process for self-reflection concentrated on uncovering antisocial thoughts, feelings, attitudes, and belief. And he contends that this type of program does not relate to his crimes because they did not involve domestic violence, mental health, or substance abuse.

The record does not contain any evidence regarding the content of the Thinking for a Change program. Without this information, we cannot examine Strong's argument. But even if we consider Strong's characterization of the program, he does not show that the trial court abused its discretion because it appears to relate to his crimes. According to Strong, the program provides a process by which offenders can examine their antisocial thoughts, feelings, attitudes, and beliefs. His crimes involved behaviors and actions that unlawfully sexualized minors, which suggests that he experienced antisocial thoughts, feelings, attitudes, or beliefs. Accordingly, this argument fails.

N.     CONTACT WITH MINORS

Special condition 17 in Appendix H prohibited Strong from "direct and/or indirect contact with minors" other than his biological children. CP at 38.

15

Strong argues that this condition violates his rights to parent and associate with family and that it should be amended to allow him contact with any members of his family, his children, and grandchildren. But Strong's argument is premised on his assertion that this condition is a broad restriction on his right to interact with all minors, which is an inaccurate characterization because the condition imposed excludes his biological children.

At best, the record shows that Strong has two minor children. There is no mention in the record of grandchildren or other minor family members. Because Strong does not show that he would be subject to this condition with respect to any other minor family members, he fails to demonstrate that this condition violates his right to parent or right to associate with family.

O.     INTERNET, COMPUTER, AUDIO OR VIDEO EQUIPMENT ACCESS OR USE

Special condition 24 in Appendix H provided that Strong was to have

> [n]o internet access or use, including email, without prior approval of the supervising CCO and Treatment Provider. Any approved device with access to the internet or with search capabilities must have internet monitoring software (paid for by the offender) installed, and the supervising CCO must be designated as the primary accountability partner.

CP at 38.

Special condition 25 in Appendix H provided that Strong was to have

> [n]o use of a computer, phone, or computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches). The CCO is permitted to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.

CP at 38.

Special condition 26 in Appendix H provided that Strong was to have

> [n]o possession of any audio or video recording equipment, to include personal electronic devices, such as cell phones, watches, and iPods, with a camera/video recording capability without the prior approval of the supervising CCO and Treatment Provider. The CCO is permitted to make random searches of any

16

computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.

CP at 38.

1.      Vagueness and Right to Associate

Strong argues that special conditions 24 and 25 are unconstitutionally vague.[2]  We agree.

Although Strong admits that the trial court can limit his access to the internet and require monitoring if the restrictions are narrowly tailored, he contends that special condition 24 is vague because it does not specify who will select the monitoring software or whether the CCO and treatment provider's approval is required for each use or only once, when the monitoring software is installed.  Internet restrictions requiring offenders to access the internet only through filters approved by an offender's CCO have been found not to be unconstitutionally vague. *Johnson*, 197 Wn.2d at 742.  But Strong is correct that special condition 24 does not advise him of when approval is required or ensure that the monitoring software is tailored to his risk to the community.  On remand, the trial court should clarify special condition 24.

Strong contends that special condition 25 is unconstitutional because it applies to all devices with access to the internet including "smart devices or cell phones" and therefore limits his ability to use these devices for constitutionally protected purposes such as calling family and friends.  PRP at 37-38.  The language of special condition 25 is very broad and appears to limit the use of all electronic communications unless they are used for job-related reasons.  This limitation, while not a total limitation on use, could be read to exclude use of phones for contacting friends and family.  On remand, the trial court should ensure that this special condition is appropriately tailored so it does not exclude constitutionally permissible use.

---

[2] Strong also argues that special condition 26 is unconstitutionally vague, but he merely asserts that the condition is vague and does now explain why it is vague.

2.      Not Crime Related

Strong argues that special conditions 24, 25, and 26 are not crime related.

Strong argues that special condition 24 is not crime related because there is no evidence that he used the internet when committing his offenses. He asserts that in his guilty plea statement he admitted only that he possessed the depictions of the minors, not that he had used the internet to obtain these depictions.

Similarly, Strong argues that special condition 26 should be stricken because it is not crime related. He contends that the evidence showed only that he possessed depictions of minors, not that he engaged in recording any audio or video of minors or used any photographic equipment.

Although Strong may not have admitted facts demonstrating that these conditions were crime related in his plea statement, the trial court was not restricted to Strong's plea statement when examining the facts of the case – it could also examine the presentence investigation report (PSI). *State v. Frederick*, 20 Wn. App. 2d 890, 903, 506 P.3d 690 (2022) (trial court relied on defendant's statement of the offense in his PSI to determine facts supporting a crime related prohibition); *Irwin*, 191 Wn. App. at 658 (same). Because the PSI is not part of the record, we cannot determine if it contained additional facts about the offense that would establish that these conditions were crime related. Because Strong has not provided the evidence necessary to review this issue, he is not entitled to relief on this ground. *Yates*, 177 Wn.2d at 18 (petitioner must have competent, admissible evidence that establishes the facts necessary to entitle him to relief); *Wolf*, 196 Wn. App. at 503 (conclusory allegations are insufficient).

3.      Article I, Section 7 and Fourth Amendment

Strong argues that special conditions 25 and 26 violate article I, section 7 and the Fourth

Amendment because they permit searches without reasonable cause.  The State concedes that

special conditions 25 and 26 should be remanded to permit searches of Strong's electronic

devices only upon reasonable cause to comply with *Cornwell*.  We accept the State's concession.

As discussed above, under *Cornwell* DOC has the authority to search a probationer's

property only if a correctional officer has a reasonable suspicion to believe a probation violation

by the probationer has occurred.  190 Wn.2d at 302.  Further, DOC may only search to the extent

necessary "for the [DOC] to monitor compliance with the particular probation condition that

gave rise to the search."  *Id.* at 304.  And there must be a nexus between the property searched

and the suspected probation violation.  *Id*. at 304, 306.  But none of these constitutional strictures

are contained in special conditions 25 or 26.  Rather, the condition gives correctional officers an

unfettered right to conduct random searches of Strong's electronics.  *Id*. at 303.

Accordingly, we remand for the trial court to amend special conditions 25 and 26 to

comply with *Cornwell*.

P.      MENTAL HEALTH TREATMENT

In special condition 27 in Appendix H, the trial court required Strong to

> Obtain mental health treatment assessment, and follow through with all
> recommendations of the provider, including taking mediations as prescribed.
> Should mental health treatment be currently in progress, remain in treatment and
> abide by all program rules, regulations and requirements.  Sign all necessary
> releases of information and complete the recommended programming.

CP at 38.

Strong argues that the trial court did not have the authority to impose this condition under

former RCW 9.94A.703 and former RCW 9.94A.704 unless the condition was crime related and

19

the court made a finding that he was mentally ill and his condition influenced the offense as required under RCW 9.94A.505(9).  We agree.

### 1.    Additional Background

At the sentencing hearing, Strong's counsel advised the trial court that Strong had experienced numerous "traumatic issues" in his adult life, that he suffered from depression and attention deficit hyperactivity disorder, and that had been sexually abused as a child.  Counsel also advised the court that Strong had engaged in counseling since the crimes.  The court also reviewed the PSI.

After hearing from counsel, Strong, and reviewing the PSI, the trial court stated,

> I think that there are – based on, in particular, what [Strong's counsel] just told me about your prior background, there very much is a mental health component to this. It needs to be evaluated, and that may bring up some very painful issues for you to deal with.  But to go forward and to be liberated from this, to not continue the cycle through to the next generation, is going to require a lot of effort on your part.

Report of Proceedings (RP) (Oct. 28, 2022) at 12.  The court later stated in the appendix that it was going to order the mental health treatment assessment.

### 2.    Inadequate Findings

A trial court has the authority to order a defendant whose sentence includes a term of community custody to "undergo a mental status evaluation . . . if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense."  RCW 9.94B.080.

In *State v. Brooks*, the court held that the trial court abused its discretion by ordering a mental health evaluation and treatment without finding that the defendant was mentally ill and that the condition likely influenced the offense.  142 Wn. App. 842, 851-52, 176 P.3d 549 (2008).

20

Similarly, in *State v. Shelton*, the court held that the trial court abused its discretion by ordering a mental health evaluation without making the necessary statutory findings under former RCW 9.94B.080 (2008). 194 Wn. App. 660, 675-76, 378 P.3d 230 (2016). The court reasoned that the plain language of the statute mandated that a "court may order a mental health evaluation only if the court finds [the defendant] 'is a mentally ill person as defined in RCW 71.24.025.' " *Id*. at 675. And despite the fact that the "court found 'mental health issues contributed to this offense' and 'treatment is reasonably related to the circumstances of this crime and reasonably necessary to benefit the defendant and the community,' " such findings did not satisfy the requirements of former RCW 9.94B.080. *Id*. at 676 (quoting former RCW 9.94B.080). The court remanded for the trial court to determine whether to order an evaluation based on the requirements former RCW 9.94B.080. *Id*.

Here, the trial court had the statutory authority to impose a mental health evaluation under RCW 9.94B.080. But despite the record showing that the trial court considered Strong's mental health and concluded that it contributed to the offenses, the court abused its discretion by imposing this condition without first finding that Strong was mentally ill as defined in RCW 71.24.025. *Brooks*, *Shelton*, and the language of the statute make clear that the court could order a mental health evaluation only if the court found that Strong is a "mentally ill person" as defined in RCW 71.21.025. Although the court arguably made findings regarding Strong's mental health, it did not find that he was mentally ill under RCW 71.24.025.

Accordingly, we reverse the trial court's imposition of a mental health evaluation condition and remand for the trial court to determine whether to order a mental health evaluation consistent with the requirements in RCW 9.94B.080.

Q.    GEOGRAPHIC BOUNDARIES

Strong argues that standard conditions 9 and 10 and special condition 19 in Appendix H are unconstitutionally vague and violate his right to travel and to associate. We disagree.

1.    Additional Legal Principles

"The freedom to travel throughout the United States has long been recognized as a basic right under the United States Constitution." *State v. Lee*, 135 Wn.2d 369, 389, 957 P.2d 741 (1998). Orders excluding an individual from a geographic area encroach on an individual's right to travel, which includes the right to travel within a state. *See State v. Sims*, 152 Wn. App. 526, 531, 216 P .3d 470 (2009).

Although "the right to travel is recognized as a fundamental right of citizenship, this right is affected by a criminal conviction." *In re Pers. Restraint of Winton*, 196 Wn.2d 270, 274, 474 P.3d 532 (2020). After a conviction and during the period of imprisonment and community custody, the limitation to the offender's constitutional rights "are subject to the infringements authorized by the SRA [Sentencing Reform Act of 1981]." *Id.* at 275. Because offenders on community custody remain under DOC jurisdiction, their right to travel is not entirely restored. *See id*. at 275. But any community custody conditions that implicate constitutional freedoms "must bear a reasonable relation to the circumstances of the crime, the offender's risk of reoffense, and public safety." *Id*. at 276.

In addition, the First Amendment protects the freedom of association. *State v. Moultrie*, 143 Wn. App. 387, 399, 177 P.3d 776 (2008). But while on community custody, an offender's constitutional rights are subject to infringement as authorized by the SRA. *Id*. at 396. This includes the restrictions on contact with specific classes of individuals. RCW 9.94A.703(3)(b). As discussed above, the court may restrict an offender's constitutional rights as a condition of

sentencing if the restriction is reasonably necessary to accomplish essential needs of the state and public order and is sensitively imposed. *Bahl*, 164 Wn.2d at 757.

2.    Standard Condition 9

Standard condition 9 in Appendix H required Strong to "[r]emain within geographic boundaries, as set forth in writing by the [DOC] Officer or as set forth with SODA order." CP at 37. This community custody condition implicates Strong's right to travel. Strong argues that this condition is unconstitutionally vague and that it unlawfully interferes with his First Amendment right to travel and his right to associate. These arguments fail.

Condition 9 required Strong to remain within geographic boundaries established by DOC. In this condition, the trial court did not independently impose a specific geographic limitation. Instead, it clearly and unambiguously, in a manner that that an ordinary person would understand, required Strong to comply with a condition to be imposed by DOC as the court was required to do under former RCW 9.94A.703(1)(b). And the court did not grant the CCO "unbridled discretion to proscribe conduct because [DOC's] authority is defined by statute." *Ortega*, 21 Wn. App. 2d at 496; *see also State v. McWilliams*, 177 Wn. App. 139, 311 P.3d 584 (2013) (trial court's delegation of authority to define parameters of a vague condition created at sentencing to DOC was not improper when DOC was statutorily authorized to impose or modify such conditions). Accordingly, this condition is not unconstitutionally vague.[3]

---

[3] Notably, because a geographic limitation can be imposed without violating Strong's constitutional right to travel if it bears a reasonable relation to the circumstances of the crime, Strong's risk of reoffense, and public safety, it is impossible evaluate this condition until DOC actually imposes the condition. Strong does not disclose whether the DOC has imposed a geographical limitation or, if it has, what the terms of this limitation is. Without this information, Strong fails to demonstrate that such limitation is unconstitutional.

Regarding Strong's right to travel argument, because he does not disclose whether DOC has actually imposed a geographic limitation or, if it has, the scope of that limitation, we cannot examine whether any limitation was reasonably related to the crime, his risk of reoffense or public safety. Accordingly, Strong's right to travel argument fails with respect to standard condition 9.

And regarding Strong's right to associate argument, condition 9 does not restrict contact with a specific class of person, so Strong fails to show a violation of his right to associate. Accordingly, Strong's right to associate argument fails with respect to standard condition 9.

2. Special Condition 19

Special condition 19 in Appendix H required Strong to

[s]tay out of areas where children's activities regularly occur or are occurring. This means parks used for youth activities, schools, daycare facilities, playgrounds, shopping malls, fast food restaurants (to include the dive-thrus), wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or CCO.

CP at 38.

Strong argues that this condition unlawfully interferes with his right to travel and his right to associate. He contends that this condition must be stricken or narrowly tailored to fit the circumstances of his crime, which he contends did not include him frequenting locations normally associated with minors. But Strong's offenses involved children, so it is reasonable to exclude Strong from locations where children are regularly present and reasonable to restrict his contact with children. Accordingly, this argument fails.

R.    SUPERVISION AND COMMUNITY PLACEMENT FEES

Strong argues that we should strike section 4.6(b)(B)(7) of the judgment and sentence, which requires him to pay supervision fees as determined by DOC and the provision in

Appendix F that requires him to pay community placement fees as determined by the DOC. We agree.

Effective July 1, 2022, the legislature removed the subsection of RCW 9.94A.703(2) that permitted the trial court to impose community custody supervision fees as a condition of community custody from the statute. LAWS OF 2022, ch. 29, § 7. Strong was sentenced in October 2022, well after the amendment took effect. Accordingly, the trial court erred when it imposed this condition. In addition, the trial court erred to the extent it required Strong to pay community placement fees because the court did not impose community placement.

Accordingly, we remand for the trial court to strike the supervision fee provision in section 4.6(b)(B)(7) of the judgment and sentence and the community placement fee provision in Appendix F.

## CONCLUSION

We grant this PRP in part and remand for the trial court to take further action consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

CHE, J.